## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ) | |
| CHARLESWORTH RAE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15–cv-0736 (KBJ) |
| ) | |
| CHILDREN'S NATIONAL MEDICAL ) | |
| CENTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Charlesworth Rae, an African-American man of Antiguan descent, was employed as an Investigational Research Pharmacist at Children's National Medical Center ("CNMC") from February of 2010 until CNMC terminated his employment in December of 2014.  (*See* 1st Am. Compl. ("Am. Compl."), ECF No. 22-1, ¶¶ 3, 5, 7.) Rae has brought the instant action against CNMC and various CNMC employees (collectively, "Defendants") under both federal and state law, alleging that he was not promoted, and was eventually terminated, due to his race and national origin, and also that Defendants ultimately fired him in retaliation for his having repeatedly expressed legitimate concerns about CNMC's pharmacy operations and for filing a police report accusing his supervisor of assault.  (*See id.* ¶¶ 46–78.)  Rae's claims have been narrowed through the course of this litigation, such that the only claims that are still at issue are those that he asserts for (1) wrongful termination in violation of public policy (Counts I and II); (2) racially discriminatory and retaliatory discharge in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code Ann. §§ 2-1401.01–1404.04

(Count III); (3) racially discriminatory and retaliatory discharge in violation of 42 U.S.C. § 1981 (Count IV); and (4) racially discriminatory and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-17 (Count VI).  Counts I–IV are asserted against CNMC, Dr. Sarah Donegan (Rae's supervisor), Dr. Ursula Tachie-Menson (Donegan's supervisor), Zandra Russell (a CNMC Human Resources representative), and Darryl Varnado (CNMC's Executive Vice President and Chief People Officer).  (*See id.* at 1 n.1.)[1]  Count VI is asserted only against CNMC. (*See id.*)

On March 15, 2017, after discovery had closed, this Court referred this matter to a magistrate judge for full case management through the district's random-assignment process.  (*See* Min. Entry of Sept. 6, 2016; Min. Order of Mar. 15, 2017.)  The case was assigned to Magistrate Judge Deborah Robinson, who subsequently granted in part a motion that Rae filed seeking to reopen discovery.  (*See* Mem. Op. & Order, ECF No. 40, at 4, 7.)  The parties proceeded to engage in a renewed period of discovery, and once they had resolved all of their discovery disputes, Defendants filed a motion for summary judgment.  (*See* 2d. Joint Status Report, ECF No. 58; *see also* Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 59.)  On March 28, 2018, Magistrate Judge Robinson issued the Report and Recommendation ("R & R") that is appended hereto as Appendix A; in that Report, Magistrate Judge Robinson recommends that Defendants' summary judgment motion be granted in its entirety with respect to Rae's remaining claims against the remaining defendants.  (*See* R & R, ECF No. 71, at 2.)

---

[1]  Page number references to the documents that the parties have filed refer to those automatically assigned by the Court's electronic case-filing system.

Before this Court at present is the R & R and Rae's objection thereto.  (*See* Pl.'s Obj. to R & R ("Pl.'s Obj."), ECF No. 78.)  Rae argues that Magistrate Judge Robinson applied the wrong causation standard to his claims (*see id.* at 1), that the R & R improperly found that he had not specified any identifiable policy to support his claims for wrongful termination in violation of public policy (*see id.* at 2), that Magistrate Judge Robinson erred in finding that he had not identified evidence to support his claims of discrimination and retaliation against CNMC (*see id.* at 4, 12–13; 17–18), and that Magistrate Judge Robinson had improperly granted summary judgment to the individual defendants based on the purported failure of his claims against CNMC (*see id.* at 15).  Rae's objection further maintains that CNMC may have "vitiated" their "at-will employment relationship" because it offered him a severance package—an argument that he did not include in the summary judgment briefing that Magistrate Judge Robinson addressed.  (*See id.* at 17.)[2]

This Court has carefully reviewed the R & R, the parties' submissions, and the record evidence, and for the reasons explained below, the Court concludes that Magistrate Judge Robinson's report and recommendation must be **ADOPTED IN PART,** and Defendants' motion for summary judgment will ultimately be **GRANTED IN FULL**.  In particular, while the Court finds that Magistrate Judge Robinson applied the wrong causation standard to the wrongful discharge claim and that the R & R is also erroneous with respect to its finding that Rae had not identified any public policy to

---

[2]  Because Rae did not raise this issue in the underlying summary judgment briefing, he is precluded from raising it in the context of an objection to the report and recommendation, *see, e.g.*, *Sciacca v. Fed. Bureau of Investigation*, 23 F. Supp. 3d 17, 27 (D.D.C. 2014) (citation omitted), and this Court has not considered it.

support his wrongful termination claims, the Court agrees with Magistrate Judge Robinson that there is insufficient record evidence of causation with respect to all of Rae's claims, and thus no reasonable jury could find that Rae had satisfied each of the elements for any of the legal claims presented.  Therefore, Defendants are entitled to summary judgment.  A separate Order consistent with this Memorandum Opinion will follow.

## I.    BACKGROUND

The factual and procedural background underlying this matter is fully recounted in Magistrate Judge Robinson's R & R and the various prior rulings that narrowed the scope of the claims on which Rae is proceeding.  What follows is a brief recitation of the relevant background facts pertaining to Rae's remaining claims, which turn on his contention that Defendants are liable for "Racially Discriminatory/Retaliatory Discharge" (*see* Am. Compl., Counts III, IV, VI) and for terminating his employment in violation of public policy (*see id.* Counts I, II).[3]

### A.    Facts

CNMC hired Rae in February of 2010 as a pharmacist in the Investigational Drug Services ("IDS") Pharmacy, and he was an at-will employee of CNMC.  (*See* Decl. of Charlesworth Rae ("Rae Decl."), Ex. 1 to Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 60-2, ¶¶ 2–3.)  Shortly after Rae was hired, he began expressing safety and regulatory concerns with respect to various practices that he allegedly observed at CNMC.  For example, he reported to the Food and Drug Administration ("FDA") his

---

[3]  The background facts that are recounted in this Memorandum Opinion are not disputed.  They are drawn from the exhibits that are attached to the parties' summary judgment filings, which consist of depositions, declarations, and materials produced during discovery.

concerns about data tampering and falsification of records with respect to an ongoing study.  (*See id.* ¶ 4.)  Such reports continued throughout his tenure.  (*See, e.g.*, *id.* ¶¶ 5, 16–18.)  In September of 2013, defendant Dr. Sarah Donegan (who is Caucasian) was hired as the Manager of the IDS Pharmacy, even though she lacked a license to practice pharmacy in the District of Columbia at the time that she was hired.  (*See id.* ¶ 8.)

Donegan and Rae had a tense relationship from the moment that Donegan began working at CNMC.  In one instance, for example, Donegan conveyed to Rae that he was improperly loud and aggressive when he addressed her.  (*See* Ex. 16 to Defs.' Mot., ECF No. 59-18, at 1 (noting that Donegan told Rae during a meeting that she felt bullied by him during their interactions because he repeatedly interrupted her and increased his tone when talking to her); Ex. 19 to Defs.' Mot., ECF No. 59-21, at 1 (noting, in the context of a counseling memorandum that Donegan issued to Rae regarding his behavior, that Rae "raised [his] voice" and refused to lower it, and "became disruptive to others" during a meeting on May 29, 2014).)  In addition, Donegan had concerns about Rae copying his personal email when responding to her or sending emails to CNMC employees, and she asked him to refrain from doing this—a request that Rae did not honor.  (*See* Ex. 24 to Defs.' Mot., ECF No. 59-26, at 1.)  Rae also apparently initially resisted instructions from Donegan to sign off on certain paperwork in connection with a research study, which resulted in a warning from Donegan to Rae about his conduct being deemed insubordination.  (*See* Ex. 25 to Defs.' Mot., ECF No. 59-27, at 1–5.)  Rae ultimately signed off on the necessary paperwork, but he indicated that he was doing so "under duress."  (*Id.* at 1.)

The tense nature of their relationship was apparently also obvious to others at CNMC. On December 13, 2013, Donegan's supervisor, Dr. Tachie-Menson, sent an email to CNMC's Human Resources office ("HR") requesting a meeting to discuss Rae in light of her concerns that Rae "is undermining [Donegan's] authority [because] [w]henever he doesn't agree with a decision made by her, he sends a response to HR and to compliance[,] . . . [and he] has been resistant to any change she has attempted to make for the improvement of the workflow and documentation compliance." (Ex. 15 to Defs.' Mot., ECF No. 59-17, at 1.) The record is also replete with email communications between Donegan and Rae—with cc's to Rae's personal email account, Tachie-Menson, and various individuals in HR, including HR contact Zandra Russell— and these exchanges consistently demonstrate Rae's resistance to Donegan's requests to meet with him individually to discuss issues related to his work. (*See, e.g.*, Ex. 16 to Defs.' Mot. at 1; *see also* Ex. 20 to Defs.' Mot., ECF No. 59-22, at 1 (email from Rae to Donegan in response to an Outlook meeting invitation, in which Rae states, "Based on your repeated hostility towards me . . . I would prefer not to meet . . . today. Alternatively, I would like to have an opportunity to first discuss my concerns with the Legal Department before meeting with you and HR under these circumstances"); Ex. 22 to Defs.' Mot., ECF No. 59-24, at 1 (email chain between Russell and Rae, during which Russell states, in response to Rae's statements about being uncomfortable meeting with Donegan, that "Dr. Donegan has the right as your manager to meet with you to discuss work-related issues[,]" and that "you were [previously] advised to meet with Pharmacy management when requested and to perform your job as expected").)

For his part, Rae allegedly had his own concerns about Donegan's conduct and work performance. In October of 2014, Rae filed a claim of assault with the Metropolitan Police Department, based on his allegation that Donegan had "hit [him] on [his] shoulder" in a manner that did not physically hurt him. (Rae Dep., Ex. 5 to Defs.' Mot., ECF No. 59-7, at 22.) Rae also complained to CNMC's compliance officer that Donegan was engaging in the unauthorized practice of pharmacy, and he submitted various reports regarding safety concerns that he had with respect to Donegan's handling of drugs. (See, e.g., Rae Decl. ¶¶ 10–11, 13.) In addition, Rae filed two charges with the EEOC alleging that Donegan was discriminating against him and harassing him—the first on June 30, 2014, and the second on November 25, 2014. (See id. ¶¶ 21, 28.)[4] In the context of the instant action, Rae further claims that Donegan shouted at him on various occasions (see, e.g., Ex. 14 to Defs.' Mot., ECF No. 59-16, at 1), and that she otherwise engaged in conduct that was "professionally disrespectful, demeaning, and unbecoming of a manager" (Ex. 16 to Defs.' Mot. at 1). Rae emailed Daryl Varnado (an HR executive), Russell, Tachie-Menson, and other HR staff on numerous occasions to complain about Donegan's treatment of him, including to report that Donegan was subjecting him to unwarranted "hostility" (e.g., Ex. 13 to Pl.'s Opp'n, ECF No. 60-14, at 1), that she had was violating CNMC's Harassment/Discrimination Policy and Procedure (see Ex. 14 to Pl.'s Opp'n, ECF No. 60-15, at 1), and that she had "publicly ridiculed and embarrassed" him (Ex. 15 to Pl.'s Opp'n, ECF No. 60-16, at 1).

Rae's relationship with Donegan deteriorated over time, such that he eventually requested that an HR representative be present for any meeting between them. (See,

---

[4] Defendants did not become aware of Rae's November charge until after his termination. (See Aff. of Zandra Russell ("Russell Aff."), ECF No. 59-48, ¶ 16.)

*e.g.*, Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Stmt. of Undisputed Facts, ECF No. 59-1, at 18–21.)  However, Donegan and the HR office both made clear to Rae that he did not have a right to insist that someone else be present when he met with his supervisor (*see, e.g.*, Ex. 23 to Defs.' Mot., ECF No. 59-25, at 1; Ex. 24 to Defs.' Mot., ECF No. 59-26, at 1), and Donegan ultimately informed Rae that if he refused to meet with her without a witness present, his refusal "will be characterized as insubordination" (Ex. 24 to Defs.' Mot. at 1).

The final and noteworthy incident before Rae's termination occurred on December 3, 2014.  Donegan had instructed Rae to appear at the HR office on December 3rd at 3 PM for a "Performance Review Discussion" with her and Russell.  (Ex. 18 to Pl.'s Opp'n, ECF No. 60-19, at 1; Ex. 37 to Defs.' Mot. ("Termination Letter"), ECF No. 59-39, at 1.)  Rae sent a responsive email to Tachie-Menson, copying Donegan and various other individuals on December 3rd:

> I wish to acknowledge receipt of an invitation from my immediate supervisor, Dr. Sarah Donegan, for a mandatory meeting with me and a HR Representative (Zandra Russell) today at 3 pm.  Based on the repeated hostile and unduly stressful meetings I have had with Dr. Donegan that have severely affected my health, coupled with my outstanding complaint of assault, it will be unhealthy and unproductive for me to meet with her at this time.  Accordingly, I would like to request that any discussions regarding my performance evaluation at this time occur[] in writing.

(Ex. 33 to Defs.' Mot., ECF No. 59-35, at 1.)  When Donegan subsequently asked Rae if he intended to attend the meeting as scheduled, he stated that he was waiting for Tachie-Menson to respond to his email.  (*See* Rae Decl. ¶ 31.)  A hallway confrontation between Rae and Donegan ensued, after which Rae went to his car.  (*See id.* ¶¶ 32–33.)  He returned to the building shortly thereafter and asked for a security escort to the 3

PM meeting.  (*See id.* ¶ 34.)  Donegan and Russell were not in the HR suite, and Donegan testified that this was because she believed that Rae had refused to attend the meeting.  (*See* Donegan Dep., Ex. 6 to Defs.' Mot., ECF No. 59-8, at 8.)  Varnado was called to the suite, and he placed Rae on indefinite administrative leave pending an investigation.  (*See* Rae Decl. ¶¶ 36–37.)

In the course of the investigation that followed, Russell learned that "Rae came to Human Resources [on December 3] with a CNMC security officer to file a complaint about Donegan's request for a mandatory meeting with him" because he believed "that Dr. Donegan's request was a form of harassment." (Russell Aff. ¶ 13.)  "Based on the investigation into [] Rae's conduct, Human Resources recommended that [] Rae's employment be terminated for his repeated harassing and insubordinate conduct toward his supervisor, Dr. Donegan, which had been well documented." (*Id.* ¶ 14.)  This decision was memorialized in a letter that Russell drafted on December 4, 2014, terminating Rae's employment effective December 8, 2014.  (*See id.* ¶ 15; Termination Letter at 1.)

**B.     Procedural History**

Rae filed his initial complaint pro se on May 15, 2015, and on March 25, 2016, this Court issued an Order dismissing certain claims and allowing Rae to file an amended complaint.  (*See* Compl., ECF No. 1; Order, ECF No. 18, at 1–2.).[5]  Rae filed his Amended Complaint on May 24, 2016.  (*See generally* Am. Compl.)  Rae secured counsel to represent him during the discovery period, but that representation ended after discovery closed and before summary judgment motions were filed.  (*See* Notice of

---

[5] Rae purports to have received a Juris Doctorate degree from Rutgers.  (*See* Compl. ¶ 11.)

Appearance, ECF No. 30; Mot. to Substitute Counsel, ECF No. 32.)  Once again proceeding pro se, Rae moved to reopen discovery, asserting that his former counsel had falsely represented that all discovery issues had been resolved.  (*See* Mot. to Reopen Disc., ECF No. 34, at 2–3.)  Magistrate Judge Robinson granted this request in part (*see* Mem. Op. & Order, ECF No. 40), and during the reopened discovery period, new counsel entered an appearance for Rae (*see* Notice of Appearance, ECF No. 51).  Then, at the close of the reopened discovery period, the parties jointly represented to Magistrate Judge Robinson that all outstanding discovery issues had been resolved. (*See* 2d Joint Status Report, ECF No. 58.)

CNMC filed its motion for summary judgment on July 28, 2017.  In that motion, Defendants argue that Rae's claims for discrimination and retaliation fail as a matter of law, because CNMC has provided a legitimate, non-discriminatory reason for his termination—insubordination—and that there is no record evidence establishing that this reason is a pretext for discrimination or retaliation.  (*See* Defs.' Mem. at 32–35, 40–41.)  Defendants further argue that Rae cannot prove that similarly-situated employees were treated differently (*see id*. at 39–40), and that they are also entitled to summary judgment on Rae's wrongful termination in violation of public policy claim, because Rae has not identified a specific policy that his termination violates and cannot prove that his termination was the result of anything other than his insubordination (*see id.* at 44–45).  Finally, with respect to the claims Rae has brought against the individual CNMC employees, Defendants assert that such claims are foreclosed because there is no evidence that these individuals acted with malice or beyond the scope of their employment at CNMC.  (*See id.* at 45–46.)

Rae opposes Defendants' summary judgment motion, arguing that the record contains "sufficient evidence for a jury to conclude that the reason given for his termination was false[,]" and that "the real reasons were (1) retaliation for reporting violations of regulations related to patient safety and the safety of drugs dispensed to the public; (2) retaliation for making a complaint of assault to the Metropolitan Police Department; and (3) retaliation for reporting harassment, hostile work environment and discrimination." (Pl.'s Opp'n at 1–2.)[6] Defendants' motion for summary judgment became ripe for review on October 16, 2017. (*See* Reply to Pl.'s Opp'n, ECF No. 70.)

Magistrate Judge Robinson issued her Report and Recommendation regarding Defendants' motion on March 28, 2018. (*See generally* R & R.) The R & R recommends that Defendants' motion for summary judgment with respect to Rae's claim for termination in violation of public policy be granted for two independent reasons. First, Magistrate Judge Robinson finds that Rae has failed to specify an "identifiable policy[,]" which is required to state a claim for wrongful discharge in violation of public policy under D.C. law. (R & R at 15 (internal quotation marks and citation omitted).) *See Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 27 (D.D.C. 2015) ("To state a claim for wrongful discharge in violation of public policy, the plaintiff must point to some identifiable policy that has been officially declared in a statute or municipal regulation, or in the Constitution, and a close fit between the policy and the conduct at issue in the allegedly wrongful termination." (quoting *Davis v. Cmty. Alternatives of Washington, D.C., Inc.*, 74 A.3d 707, 709–10 (D.C. 2013)) (internal

---

[6] Shortly after filing this opposition brief, Rae's counsel moved to withdraw her appearance. (*See* Mot. to Withdraw as Att'y, ECF No. 63.) Rae has been proceeding pro se since Magistrate Judge Robinson granted the withdrawal motion. (*See* Min. Order of Oct. 19, 2017.)

quotation marks omitted).)  Magistrate Judge Robinson also concludes that Rae "has offered no evidence that his protected conduct was the 'sole reason'" for his termination, and has instead offered "only his bare speculation[.]"  (R & R at 17 (quoting *Hewitt v. Chugach Gov't Servs., Inc.*, No. 16-cv-2192, 2016 WL 7076987, at *2 (D.D.C. Dec. 5, 2016)).)

Magistrate Judge Robinson's R & R further concludes that Defendants are entitled to summary judgment on Rae's retaliation claims, primarily because the only adverse action at issue was his termination (*see id.* at 7 n.5), and Rae "offered *no* evidence that the proffered reason for the termination of his employment was false, or was a pretext for retaliation (*see id.* at 18.  Instead, according to the R & R, the "Statement of Genuine Issues" that is included in Rae's brief "merely recounts the chronology of events during the course of his employment at CNMC; his concerns regarding patient safety and the safety of drugs dispensed to the public; his complaints regarding harassment, hostile work environment and discrimination, and his denial of having been insubordinate."  (*Id.*)  Magistrate Judge Robinson also explains that she "reviewed each of the exhibits Plaintiff filed" in order to determine whether any "serves as evidence of a genuine issue regarding a fact material to Plaintiff's retaliation claims" and found that none did.  (*Id.* at 19.)[7]  With respect to the retaliation claims that Rae has brought against the individual defendants, Magistrate Judge Robinson finds that the individual defendants are also entitled to summary judgment, because "any claim

---

[7] The R & R treats Rae's discrimination claims as having been subsumed into his retaliation allegation, and therefore effectively "withdrawn," because his opposition brief contained no argument regarding those claims.  (R & R at 7 n.5.)  Rather, Rae specifically asserts that the real reason for his termination was retaliation.  (*See* Pl.'s Opp'n at 1–2.)

against any one of them must be predicated upon one or more of the causes of action which Plaintiff pled, none of which can survive summary judgment." (*Id.* at 20.)

Rae has asserted a number of objections to the R & R's finding and conclusions. (*See generally* Pl.'s Obj.)  With respect to his claim for wrongful termination in violation of public policy, Rae's objection is twofold.  He argues, first, that he *has* identified a public policy to support his claims; specifically, "'the public policy underlying the legal proscriptions on the storage and handling of drugs[.]'" (Pl.'s Obj. at 2 (quoting *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1331 (D.C. Cir. 1999)).)  Rae also contends that the proper causation standard for claims alleging termination in violation of public policy is a "predominate reason" and not the "sole reason" standard that Magistrate Judge Robinson applied (*id.* at 1 (citing *Bereston v. UHS of Del., Inc.*, 180 A.3d 95 (D.C. 2018)), and that there is sufficient record evidence to show that his conduct in reporting safety concerns regarding prescription drugs was a predominate reason for his termination (*see id.* at 4).  With respect to his claims for retaliatory discharge under Title VII, section 1981, and the DCHRA, Rae contends that the proper causation standard for such claims is a "motivating reason" standard, rather than the "but for" standard that Magistrate Judge Robinson applied. (*Id.* at 1.)  And he further maintains that the question of whether his protected conduct led to his termination is one for a jury, "because there is a close temporal relationship between [his] claimed protect[ed] activity and the falsity of the reasons Defendants give for [his] termination." (*Id.* at 12.)  Finally, Rae objects to the findings regarding his claims against the individual defendants, arguing that he did not have a fair opportunity during discovery

to develop evidence about whether they acted with malice or outside the scope of their employment.  (*See id.* at 16.)[8]

Defendants respond that this Court should overrule Rae's objections to the R & R because Magistrate Judge Robinson applied the appropriate causation standard for his claims (*see* Defs.' Resp. to Pl.'s Obj., ECF No. 80, at 5), correctly found that he had not identified a public policy on which to predicate a wrongful termination claim (*see id.* at 6–8), properly concluded that Rae did not produce sufficient evidence to send any of his claims to a jury (*see id.* at 8–10), and correctly dismissed the claims against the individual defendants on the grounds that his underlying claims all failed (*see id.* at 10). Rae replied to Defendants' arguments concerning his objection on July 6, 2018.  (*See* Reply to Defs.' Obj. Resp., ECF No. 85.)[9]

---

[8]  Rae does not object to the R & R's conclusion that he is now proceeding solely on his claims for retaliation and not racially-based disparate treatment (*see supra* n.7), and this Court generally agrees that he abandoned his disparate treatment claims by not pursuing them in the context of the underlying summary judgment briefing.  However, as explained in Part III.B, *infra*, the Court also finds, in the alternative, that the state of the record is such that no reasonable jury could conclude that Defendants' asserted reason for his termination was a pretext for race discrimination.

[9]  Following the completion of briefing on the objection to the R & R, Rae submitted a supplemental declaration in support of the objection.  (*See* Pl.'s Suppl. Obj., ECF No. 96.)  This declaration largely consists of a reiteration of the events underlying this case, with additional citations to the record and case law.  In addition, Rae makes new legal arguments which, as noted *supra* in note 2, are not proper in the context of an objection to a report and recommendation, and which this Court will not consider. (*See, e.g.*, *id.* at 19–20 (arguing that the CNMC Employee Handbook is an employment contract, and that CNMC breached that contract by terminating him); *id.* at 28–29 (arguing that he was engaged in the protected activity of opposing an unlawful discriminatory practice when he copied his personal email); *id.* at 49 (arguing that the wrong statute of limitations was applied to his claims under section 1981).)

## II.    LEGAL STANDARDS

### A.    Review Of Objections To A Magistrate Judge's Report And Recommendation

When a magistrate judge issues a report and recommendation on a motion for summary judgment, any party may file written objections to the proposed findings and recommendations within fourteen days.  *See* LCvR 72.2(a)(3), (b).  Any objection must "specifically designate the order or part thereof to which objection is made, and the basis for the objection."  *See* LCvR 72.3(d).  And upon receipt of a timely objection, this Court is obligated to "make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

Put another way, "the Court's analysis with respect to such issues is 'equivalent to a decision in the first instance on the merits' of the [motion] for summary judgment." *Harris v. Friendship Pub. Charter Sch.*, No. 18-cv-396, 2019 WL 954814, at *2 (D.D.C. Feb. 27, 2019) (quoting *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 60 (D.D.C. 2011)).

### B.    Motions For Summary Judgment Under Rule 56

To succeed on a motion for summary judgment, the moving party must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record[,]" Fed. R. Civ. P. 56(c)(1)(A), and "[a] fact is material if it 'might affect the outcome of the suit under the governing law[,]'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)).  The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the non-moving party must designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

When assessing a motion for summary judgment, this Court's role is solely to determine "whether there is a genuine dispute for trial[,]" and the Court must not make credibility assessments or weigh evidence.  *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013).  Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  Notably, however, the Court need not accept conclusory assertions that are unsupported by the record evidence.  *See Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [video evidence in] the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## III.   ANALYSIS

As explained above, at issue at this stage of the instant case are Rae's claims for wrongful termination in violation of public policy (Counts I and II), and for racially discriminatory and retaliatory discharge in violation of the DCHRA (Count III), 42 U.S.C. § 1981 (Count IV), and Title VII (Count VI).  Magistrate Judge Robinson's R & R recommends that this Court grant Defendants' motion for summary judgment

regarding these claims in its entirety, and this Court ultimately agrees, as explained below. While Rae is correct that certain aspects of the R & R are erroneous, the Court concludes that Rae has nevertheless provided insufficient evidence to support a jury finding that the reason given for his termination was pretextual and that the real reason was retaliation for his having engaged in certain protected activities or race discrimination.

### A. Defendants Are Entitled To Summary Judgment On Rae's Claims For Termination In Violation Of The Public Policies He Has Identified, Because There Is No Evidence That Defendants Terminated Rae In Violation Of Any Such Policy

As explained above, the R & R recommends that Defendants' motion for summary judgment with respect to Rae's claim for termination in violation of public policy be granted because Rae had failed to point to the requisite "identifiable policy[,]" (R & R at 15 (quotation marks and citation omitted)), and because he "has offered no evidence that this protected conduct was the sole reason" for his discharge, instead relying on "only his bare speculation." (*See id.* at 17 (internal quotation marks and citation omitted).) Rae asserts that he has identified "'the public policy underlying the legal proscriptions on the storage and handling of drugs'" (Pl.'s Obj. at 2 (quoting *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1331 (D.C. Cir. 1999))), and he further maintains that there is sufficient record evidence to show that his protected conduct was a predominate reason for his termination (*see* Pl.'s Obj. at 4; *see also* Pl.'s Suppl. Obj. at 46.) This Court agrees with Rae that he has identified a public policy to support his wrongful termination claim, and that the "predominate reason" standard applies, but Rae has not provided evidence from which a reasonable jury could determine that his

reports about drug handling and pharmacy practices were a predominate reason for his termination.

      1.     <u>The R & R Incorrectly Found That Rae Had Not Identified A Public Policy And Applied The Wrong Legal Standard To His Claim</u>

In *Adams v. George W. Cochran & Co.*, *Inc.*, 597 A.2d 28 (D.C. 1991), the District of Columbia Court of Appeals held "that there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Id.* at 34. The Court later clarified "that the 'very narrow exception' created in *Adams*" was not so narrow as to foreclose the exception entirely, and, in particular, that the exception "should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition." *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997).

In finding that Rae had not pointed to a recognized public policy that could support invocation of this exception, Magistrate Judge Robinson distinguished the key case on which Rae relies, *Liberatore v. Melville Corp.*, 168 F.3d 1326 (D.C. Cir. 1999), which involved a plaintiff's claim that he was wrongfully discharged "in retaliation for his threat to report to the Federal Drug Administration [] the unlawful condition in which his employer was storing pharmaceutical drugs[.]" *Id.* at 1327. Relying on *Adams*, the D.C. Circuit panel found that the plaintiff's termination implicated "the public policy underlying the legal proscriptions on the storage and handling of drugs" and "protecting the public from the purchase of adulterated drugs[,]" and thus, that the plaintiff had stated a cognizable claim for termination in violation of public policy. *Id.*

at 1331.  Magistrate Judge Robinson nevertheless rejected Rae's reliance on *Liberatore*, on the grounds that Rae was basing his claim on what she perceived to be a *different* policy:  "patient safety and the safety of drugs dispensed to the public.'"  (R & R at 17 n.7 (quotation marks and citation omitted); *see also* Pl.'s Obj. at 9–10 (noting that Rae had made safety reports regarding "patient safety concerns pertaining to drug potency and regulatory concerns"); *id.* at 13 (pointing out Rae's reporting of "a number of 'good catches' drug safety interventions involving expired investigational drugs").)

This Court finds that the distinction that the R & R draws between a public policy concerning "the legal proscriptions on the storage and handling of drugs" and "protecting the public from the purchase of adulterated drugs"—which *Liberatore* plainly recognizes, 168 F.3d at 1327—on the one hand, and a public policy concerning "patient safety and the safety of drugs dispensed to the public'" (R & R at 17 n.7), on the other, is one without a difference, as far as the wrongful termination tort is concerned.  Therefore, based on the authority of *Liberatore*, this Court concludes that Rae has, in fact, identified a public policy on which he can base the wrongful termination claim in Count I.  And to the extent that Rae alternatively seeks to ground his tort claim on his report to MPD that Donegan assaulted him (*see* Pl.'s Opp'n at 8), he has likewise plainly identified the necessary public policy for Count II, *see Perkins v. WCS Constr., LLC*, No. 18-cv-751, 2018 WL 5792828, at *8 (D.D.C. Nov. 5, 2018) (finding that plaintiff stated a claim for wrongful termination in violation of public policy based on her reporting a criminal threat of assault).

The R & R also mistakenly determined that the narrow *Adams* exception to at will termination "is recognized in this jurisdiction [only] when violation of such public

policy is the 'sole reason' for the employee's termination."  (R & R at 11 (quoting *Arias v. Marriott Int'l, Inc.*, 217 F. Supp. 3d 189, 197 (D.D.C. 2016).)  While the D.C. Court of Appeals in *Adams* initially established a "sole reason" standard, its later decisions have adopted the "predominant reason" standard to which Rae points.  *See, e.g.*, *Bereston v. UHS of Delaware, Inc.*, 180 A.3d 95, 104 n.25 (D.C. 2018); *Davis v. Cmty. Alternatives of Wash., D.C., Inc.*, 74 A.3d 707, 710 (D.C. 2013); *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 886 n.25 (D.C. 1998). Consequently, to survive Defendants' motion for summary judgment with respect to Counts I and II, Rae's wrongful termination claims must be supported by sufficient evidence to permit a reasonable jury to conclude that Rae was discharged predominantly because he did not countenance CNMC's alleged violations of drug-handling or safety standards, or predominantly because he did not keep quiet about Donegan's alleged assault.

2. The R & R Correctly Found That There Is Insufficient Evidence Connecting Rae's Protected Conduct To His Termination

On the record presented here, this Court concludes (as Magistrate Judge Robinson ultimately did) that there is no genuine issue of material fact concerning whether Rae's conduct in making drug safety reports or his police report concerning Donegan was a predominant reason for his termination.

Rae's efforts to establish such a genuine dispute are primarily comprised of an attempt to raise the specter of pretext, by making various assertions that relate to the legitimate reason that CNMC offered for his termination—that his "continued pattern of insubordinate and harassing behavior" towards Donegan, including the facts surrounding his attendance at the December 3, 2014, meeting.  (Termination Letter at

1.)  For instance, Rae emphasizes that he "did in fact attend the meeting" on December

3rd, and he argues that this circumstance indicates that CNMC's "insubordination"

contention is pretextual.  (Pl.'s Obj. at 6.)  But his analysis in this regard ignores both

key facts about what Donegan believed concerning the meeting at issue, and also the

related and well-established principle that, when considering questions of pretext in the

employment realm, courts look not at "the correctness or desirability of the reasons

offered, but whether the employer honestly believes in the reasons it offers."  *Woodruff*

*v. Peters*, 482 F.3d 521, 531 (D.C. Cir. 2007) (quotation marks and citation omitted).

And based on the undisputed record facts about what happened prior to that meeting,

there can be no question that Donegan reasonably believed that Rae did not plan to

attend the meeting.  (*See* Donegan Dep. at 8.)  Russell, too, apparently doubted Rae's

willingness to meet as requested; she conducted an investigation and determined that

Rae was present in Human Resources on December 3rd at 3 PM not for the mandatory

meeting that Donegan had set, but for an entirely separate reason:  to complain, once

again, about Donegan asking to meet with him in person.  (*See* Russell Aff. ¶ 13.)

Thus, the record establishes that Russell and Donegan both sincerely and reasonably

believed that Rae was being insubordinate regarding the December 3rd meeting.

Rae also attempts to establish pretext based on the contention that his copying of

correspondence to his personal email was not a violation of CNMC's IT policy.  (*See*

Pl.'s Obj. at 7 (asserting that, therefore, "Defendants' stated reason for Plaintiff's

alleged insubordination for copying his email is false").)  But any dispute over whether

or not Rae's copying conduct violation CNMC's policies is not material.  What *is*

relevant is that Donegan gave Rae an express instruction based on her reading of the

policy (*see* Ex. 27 to Defs.' Mot., ECF No. 59-29, at 3–4), and that Rae refused to comply (*see id.*).  Rae does not dispute that Donegan had demanded that he cease that behavior and that he did not do so; therefore, whether the IT policy actually prohibited Rae from copying his personal email address is entirely beside the point.  (*See id.*)

Similarly, Rae's assertion that he did not continually harass Donegan, and that he did not act unprofessionally toward her or undermine her authority (*see* Pl.'s Obj. at 7–8), does not create a genuine issue regarding the real reason for his termination.  Again, the record is replete with evidence that indisputably establishes Rae's insubordinate conduct and contentions on various occasions, and the evidence also amply demonstrates that Donegan and others had a legitimate basis for believing—and did, in fact, believe—that Rae had acted inappropriately toward Donegan and refused to follow her instructions.  (*See, e.g.*, Ex. 15 to Defs.' Mot. at 1 (email from Tachie-Menson to HR personnel on December 13, 2013, expressing concerns that Rae is undermining Donegan's authority); Ex. 19 to Defs.' Mot., ECF No. 59-21, at 1 (counseling memorandum from Donegan to Rae on June 4, 2014, reflecting her belief that Rae inappropriately raised his voice when discussing a matter with her); Ex. 24 to Defs.' Mot., ECF No. 59-26, at 1 (email from Donegan to Rae on August 24, 2014, stating that if he refused to participate in a meeting with her "it will be characterized as insubordination"); Ex. 25 to Defs.' Mot., ECF No. 59-27, at 5 (email from Donegan to Rae on October 8, 2014, explaining that his refusal to comply with her instructions to sign certain documents would be deemed insubordination); *see also* Rae Decl. ¶ 20 (admitting that Donegan had expressed that she felt bullied by him).)  And there is nothing in the record that supports the conclusion that Rae's reporting activity played

*any* role in the termination decision, much less that it was the predominate reason for his firing.

Indeed, the *only* record evidence that could conceivably support the predominance element of Rae's public policy claim is the proximity in time between Rae's drug safety and police reports and his termination.  It appears that the last drug safety report he made was in May of 2014, which was seven months before his termination (*see* Pl.'s Opp'n at 7–8), and that he contacted the police in October of 2014, two months before his termination (Ex. 30 to Defs.' Mot, ECF No. 59-32, at 1.). But Rae has not cited any wrongful termination cases that hold that the predominance element can be satisfied solely based on timing of the activity that the public policy protects relative to the employee's termination, and this is especially so where, as here, the two events are literally *months* apart.  In the analogous realm of Title VII retaliation claims, *see Perkins*, 2018 WL 5792828, at *8, it is well established that a seven-month window between the protected activity and the adverse action does not give rise to a reasonable inference that the former was the predominant reasons for the latter.  *See, e.g.*, *Wilson v. Mabus*, 65 F. Supp. 3d 127, 133 (D.D.C. 2014) (finding that a four-month gap between protected activity and an adverse action is too attenuated to establish causation in a Title VII case).  And, even if a two-month gap—such as the one between Rae's police report and his termination—is sufficiently close in time to raise a genuine issue concerning causation based on temporal proximity (which is doubtful), it would nevertheless be improper for a jury to infer that there is causation and pretext based on such temporal proximity standing alone.  *See, e.g.*, *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (noting that "positive evidence beyond mere proximity is

required to defeat the presumption that the [employer's] proffered explanations are genuine" (internal quotation marks and citation omitted)); *Snowden v. Zinke*, 15-cv-1382, 2020 WL 7248349, at *14 (D.D.C. Dec. 9, 2020) (explaining, in the context of a Title VII retaliation case, that "temporal proximity between [protected activity and an adverse employment action], standing alone, is insufficient to raise a reasonable inference of pretext"). In the instant context, Rae has offered nothing more.

As a result, this Court confidently concludes that there are no genuine disputes of material fact regarding whether Rae can establish each of the elements of the tort of wrongful termination in violation of public policy, which means that Defendants are entitled to summary judgment on Counts I and II.

**B.     Defendants Are Entitled To Summary Judgment On Rae's Claims For Retaliation And Discrimination And Under Title VII, 42 U.S.C. § 1981, And The DCHRA, Because There Is No Evidence That Defendants Terminated Rae Due To His Protected Activities Or Race**

The Court next considers Rae's claims that that CNMC terminated him in retaliation against for his protected activity, or that his termination was discriminatory in violation of Title VII, section 1981, and the DCHRA. As mentioned, Magistrate Judge Robinson concluded that Rae's silence with respect to the discrimination claims in the context of his opposition amounted to a withdrawal of his claims in this regard. (*See supra* n.7.) But even if Rae had not forfeited his right to pursue those claims, Magistrate Judge Robinson's conclusion that Rae had "not offered 'sufficient evidence' from which a reasonable trier of fact could find in his favor; indeed, he has offered *no* evidence that the proffered reason for the termination of his employment was false, or was a pretext for retaliation" (R & R at 18) is not only accurate, it applies to the discrimination claims as well.

Magistrate Judge Robinson reached this conclusion while applying the *McDonnell Douglas* burden-shifting framework, which " requires that the plaintiff must, first, point to evidence of a 'prima facie case'—i.e., (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Rochon v. Lynch*, 139 F. Supp. 3d 394, 403 (D.D.C. 2015) (internal quotation marks and citation omitted), *aff'd*, 664 F. App'x 8 (D.C. Cir. 2016).  Once a plaintiff establishes his prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, and if it does so, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s]," leaving only the ultimate question of "discrimination *vel non*[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142.  "And on that question, the burden of showing that a reasonable jury could find that defendant's reasons are pretextual and that the real reason for the adverse action was discriminatory or retaliatory animus falls on the plaintiff." *Rochon*, 139 F. Supp. 3d at 403.[10]

Because Rae's termination indisputably qualifies as an adverse action, and because CNMC has articulated a legitimate, non-discriminatory reason for its decision to terminate his employment, the central question that this Court must answer to decide the pending summary judgment motion is "whether the employee 'produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated

---

[10]  The *McDonnell Douglas* framework applies to Rae's discrimination and retaliation claims because he has not presented any *direct* evidence of discrimination or retaliation.  *See, e.g.*, *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (noting that, in the absence of direct evidence of discrimination, claims under the DCHRA and section 1981 proceed under Title VII's *McDonnell Douglas* framework).

against the employee' on the basis of a protected class or activity." *Davis v. Mnuchin*, No. 08-cv-0447, 2018 WL 8584035, at *13 (D.D.C. Nov. 13, 2018) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

Rae objects to the R & R's conclusion that his evidence is insufficient in this regard, once again pointing to the purported falsity of the reasons that CNMC offered for his termination, and the proximity of time between his protected activities and his termination.  (*See* Pl.'s Obj. at 12.)  However, as this Court has already explained in Section III.A.2, *supra*, there is no record evidence to support Rae's assertion that the reason that CNMC proffered for his termination was false, or that Donegan and Russell did not actually believe that Rae had engaged in a "continued pattern of insubordinate and harassing behavior towards [Donegan.]"  (Termination Letter at 1.)  What is more, while Rae might well have complained to CNMC's Human Resources office about Donegan's treatment of him in late November of 2014 and early December of 2014, "[i]t is the binding precedent of this circuit that 'positive evidence beyond mere proximity [between protected activity and adverse action] is required to defeat the presumption that the employer's proffered explanations are genuine.'"  *Snowden*, 2020 WL 7248349, at *14 (quoting *Talavera*, 638 F.3d at 313 (alterations omitted)).  Rae has not offered any admissible positive evidence demonstrating pretext, as previously discussed, and he has therefore failed to establish that there is a genuine issue of fact for trial concerning the reasons for his termination.[11]

---

[11]  Rae's lack of evidence showing that his termination was retaliatory necessarily means that the *standard* of causation is irrelevant.  But to the extent that Rae takes issue with Magistrate Judge Robinson's statement that a "but-for" causation standard applies to his retaliation claims, rather than a "motivating reason" standard (Pl.'s Obj. at 1–2), he is mistaken in this regard as well. "[T]here is no 'mixed motive' retaliation[.]"  *Saunders v. Mills*, 172 F. Supp. 3d 74, 86 (D.D.C. 2016) (citations

**C.**     **The Individual Defendants Are Entitled To Summary Judgment On Rae's Wrongful Termination Claim And His Claims Under Section 1981 And The DCHRA Because, As Rae Has Pled Them, The Claims Against The Individuals Are Indistinguishable From His Failed Claims Against CNMC**

Finally, this Court also agrees with Magistrate Judge Robinson's conclusion concerning the claims that Rae has brought against the individual defendants.  Rae's complaint indicates that Counts I–IV are brought against CMNC *and* various individual defendants.  (*See* Am. Compl. at 1 n.1)  Magistrate Judge Robinson's R & R found that, so pled, "any claim against any one of [the individual defendants] must be predicated upon one or more of the causes of action which Plaintiff pled, none of which can survive summary judgment."  (R & R at 20.)  *Cf. Brown v. Children's Nat. Med. Ctr.*, 773 F. Supp. 2d 125, 136 (D.D.C. 2011) (explaining that "a claim for individual liability under [s]ection 1981 requires an affirmative showing linking the individual defendant with the discriminatory action'" (quoting *Page v. Winn–Dixie Montgomery, Inc.*, 702 F. Supp. 2d 1334, 1355 (S.D. Ala. 2010))).  The Court concurs with the R & R's conclusion that the claims that Rae has brought against the individual defendants are indistinguishable from the claims that he makes against CNMC with respect to those same causes of action.  And Rae appears to take no issue with this basic legal principle; instead, he contends that his retaliation claims do, in fact, survive summary judgment. (*See* Pl.'s Obj. at 15–17.)  Unfortunately for Rae, they do not.  Therefore, the individuals defendants, too, are entitled to summary judgment with respect to Counts I–IV.[12]

---

omitted).  Rather, a retaliation claim "must be proved according to the traditional principles of but-for causation." *Id.*

[12]  Rae also contends that he did not have a fair opportunity to develop evidence regarding the individual defendant's motivations or whether they acted outside the scope of their employment.  (*See*

## IV.    CONCLUSION

For the reasons articulated above, and as stated in the accompanying Order, Magistrate Judge Robinson's Report and Recommendation is **ADOPTED IN PART**, and to the extent that she correctly concluded that there is no genuine issue of material fact concerning whether or not Defendants terminated Rae in violation of public policy or whether the reason that Defendants provided for Rae's termination—his insubordination and harassment of his supervisor—was a pretext for discrimination or retaliation.  The fact that the R & R's analysis contains misrepresentations concerning various legal standards and misapprehends Rae's public policy argument does not undermine its ultimate determination that Rae has not presented sufficient evidence to proceed to trial.  Consequently, Defendant's Motion for Summary Judgment (ECF No. 59) must be **GRANTED**.

DATE:  December 28, 2020             *Ketanji Brown Jackson*
                                     KETANJI BROWN JACKSON
                                     United States District Judge

---

Pl.'s Obj. at 16.)  This argument is irrelevant to the disposition of these claims, because evidence in this regard does not relate to the unsubstantiated elements of his underlying retaliation claims.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLESWORTH RAE,

    Plaintiff,

 v.

CHILDREN'S NATIONAL MEDICAL
CENTER, et al.,

    Defendants.

Civil Action No. 15-00736
KBJ/DAR

## REPORT AND RECOMMENDATION

Plaintiff was formerly employed by Defendant Children's National Medical Center (hereinafter "CNMC") as a research pharmacist.  In this action, Plaintiff, in his First Amended Complaint, alleges that Defendant CNMC, and individual supervisory and management officials further identified herein, engaged in discriminatory and retaliatory conduct violative of public policy; the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*; 42 U.S.C. § 1981, and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq*. *See generally* First Amended Complaint (ECF No. 22-1).  Defendants, in response to the First Amended Complaint, denied the allegations of discrimination and retaliation, and pled seven affirmative defenses, including the defenses that certain of Plaintiff's claims are barred by the applicable statute of limitations and his failure to exhaust his administrative remedies.  *See generally* Answer and Affirmative Defenses (ECF No. 25).  Discovery has closed, and Defendants Children's National Medical Center, et al.'s Motion for Summary Judgement (ECF No. 59) has been fully briefed.

Upon consideration of the motion and accompanying Memorandum of Law in Support of Defendants' Motion for Summary Judgment (ECF No. 59-1) ("Defendants' Memorandum"); Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (ECF No. 60) ("Plaintiff's Opposition"); Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (ECF No. 70) ("Defendants' Reply"); Defendants' statement of material facts as to which there is no genuine issue; Plaintiff's statement of genuine issues, and the exhibits filed by the parties in support of and in opposition to Defendants' motion, the undersigned recommends that Defendants' motion be granted with respect to the remaining claims and Defendants.[1]

## I.     Procedural Background

Plaintiff, proceeding *pro se*, commenced this action in May 2015 by the filing of a 50-page complaint in which he named CNMC and a total of seven management officials as defendants.  Plaintiff stated that he was born in Antigua; immigrated to the United States in 1979; earned an undergraduate degree, and later, earned both doctor of pharmacy and juris doctor degrees.  *See* Complaint (ECF No. 1) ¶¶ 10-11.  Plaintiff stated that in February 2010, he was hired by CNMC as an Investigational Research Pharmacist "pursuant to an 'at will' employment contract."  *See generally id.* at 1.  Plaintiff described a series of instances of perceived irregularities in the pharmacy operations which he brought to the attention of CNMC

---

[1] At various times during the course of the proceedings in this action, Plaintiff represented himself; indeed, it appears that Plaintiff has been unrepresented in this action since October 19, 2017.  *See* 10/19/2017 Minute Order. However, Plaintiff was represented by counsel during the course of discovery, and throughout the briefing of Defendants' motion for summary judgment.  Accordingly, the undersigned's consideration of Plaintiff's opposition to Defendants' motion does not include the otherwise expansive reading which would be accorded to the submissions of *pro se* litigants.  *See, e.g., Bowe-Connor v. McDonald*, Civil Action No. 15-00231, 2016 WL 5675854, at *4, n.2 (D.D.C. Sept. 30, 2016), *aff'd and remanded*, No. 16-05289, 2017 WL 2373002 (D.C. Cir. Apr. 11, 2017).

management officials throughout 2010.  *See generally id.*, ¶¶ 16-31.  Plaintiff alleged that in

2011, he applied for, but was denied, a promotion.  *Id.*, ¶ 62.  Plaintiff further alleged that

continuing through as late as December, 2014, he voiced additional concerns regarding

pharmacy operations, while being subjected to unwarranted criticism and false accusations by

CNMC managers.  *See id.*, ¶¶ 63-161.  Plaintiff stated that on December 8, 2014, he received a

"Termination of Employment" letter by which he was advised that a decision had been made to

terminate his employment on that date "[a]s a result of the continued pattern of insubordinate and

harassing behavior towards your supervisor[.]"  *Id.*, ¶ 162.  Plaintiff, in that complaint, stated that

he filed charges of discrimination with the Equal Employment Opportunity Commission, in

which he alleged both discrimination on the basis of his race, age, gender and national origin,

and retaliation "for asserting his legal right in filing [a] report of assault [by an immediate

supervisor, one of the named Defendants] with the Metropolitan Police [Department]."  *Id.*, ¶¶

152, 165-169.  Plaintiff, in that complaint, alleged "Harassment and Hostile Work Environment"

("First Count"); "Disparate Treatment" with respect to having been "passed over" for promotion,

"singled out" for disciplinary action and ultimately terminated (Count Two); "reprisal" for

reporting perceived pharmacy operations irregularities and filing a report of assault by his

immediate supervisor (Count Three); assault (Count Four); wrongful termination (Count Five);

defamation (Count Six), and "Negligent Supervision" (Count Seven).  Plaintiff named CNMC as

a Defendant; additionally, Plaintiff named as Defendants Kurt Newman, President and Chief

Executive Officer; Sarah Donegan, Investigational Drug Services ("IDS") Unit Manager; Ursula

Tachie-Menson, Chief of Pharmacy; Zandra Russell, Senior Human Resources Business Partner;

Denise Cooper, Principal Human Resources Consultant for Labor Strategy and Human

Resources Compliance; Wilhelmina DeShazo, Senior Human Resources Business Partner, and Darryl Varnado, Executive Vice President and Chief People Officer.

By an Order filed on March 25, 2016, the Court (K. Jackson, J.) granted Defendants' motion to dismiss with respect to Counts One, Four, Six and Seven.  Additionally, the Court granted Defendants' motion to dismiss any claims under the Age Discrimination in Employment Act which Plaintiff asserted in the context of Counts Two and Three; and claims in Counts Two and Three brought under Title VII of the Civil Rights Act of 1964 arising from events that occurred prior to March 21, 2014, or under the D.C. Human Rights Act arising from events that occurred prior to February 12, 2014.  Order (ECF No. 18) at 1.  Finally, the Court granted Plaintiff's oral motion for leave to file an amended complaint, and required that in so doing, Plaintiff "must clarify the law under which each count is being brought and the particular defendant(s) to which each count pertains."  *Id*. at 2; *see also* Transcript of Proceedings at 46 (ECF No. 20).

In the amended complaint filed in accordance with the March 25, 2016 Order, Plaintiff alleges "Wrongful Termination in Violation of Public Policy Promoting Drug Safety" (Count I); "Wrongful Termination in Violation of Public Policy Favoring Reports of Illegal Activity to Law Enforcement" (Count II); "Racially Discriminatory/Retaliatory Discharge in Violation of DC Human Rights Act" (Count III); "Racially Discriminatory/Retaliatory Discharge in Violation of 42 U.S.C. § 1981" (Count IV); "Discriminatory/Retaliatory Denial of Promotion[,]" also in violation of 42 U.S.C. § 1981 (Count V); "Racially Discriminatory/Retaliatory Discharge in violation of Title VII" (Count VI), and "Racially Discriminatory Disparate Treatment in violation of Title VII" (mistakenly designated Count VI, but hereinafter designated "Count VII").  First Amended Complaint (ECF No. 22-1).  Plaintiff again named CNMC and the same

seven management officials as Defendants; however, in the amended complaint, he indicated that Counts VI and VII "are only being asserted against Defendant Children's Nation Medical Center[,]" but that Counts I through V "[are being asserted] against all named defendants." *Id*. at 1, n.1.

The undersigned granted the unopposed motion of Defendants Kirk Newman and Wilhemina DeShazo for judgment on the pleadings, resulting in the dismissal of Plaintiff's First Amended Complaint as to them.  08/01/2017 Minute Order.  The undersigned also dismissed Count V and Count VII of Plaintiff's First Amended Complaint, and Denise Cooper as a Defendant, *see* Plaintiff's Opposition at 1, n.1, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  03/08/2018 Minute Order.

Thus, the remaining claims are Plaintiff's claims that he was wrongfully terminated in violation of public policy (Counts I and II); "Racially Discriminatory/Retaliatory Discharge" in violation of the D.C. Human Rights Act (Count III); "Racially Discriminatory/Retaliatory Discharge" in violation of 42 U.S.C. § 1981 (Count IV), and "Racially Discriminatory/Retaliatory Discharge" in violation of Title VII (Count VI).  The remaining individual Defendants are Sarah Donegan, Ursula Tachie-Menson, Zandra Russell and Darryl Varnado.[2]

## II.    The Parties' Contentions

Defendants, in their memorandum of points and authorities in support of their motion, maintain that given the Court's ruling that the only claims of discrimination which Plaintiff may assert must have occurred after February 12, 2014, and that the only adverse employment action

---

[2] Given the dismissal of the two claims and the three individual Defendants addressed in the preceding section, only the contentions relevant to the remaining claims and Defendants will be further addressed herein.

Rae v. Children's National Medical Center, et al.                                    Appendix A

which remains viable is Plaintiff's claim regarding the termination of his employment. Defendants' Memorandum at 30-31.[3]  Defendants submit that they are entitled to summary judgment in their favor for the following reasons: (1) Plaintiff has no direct evidence of discrimination or retaliation; (2) Defendant CNMC has documented legitimate, nondiscriminatory business reasons for its business decisions regarding Plaintiff; (3) Plaintiff has no evidence that the reasons CNMC offers for the termination of his employment are pretextual; (4) Plaintiff cannot identify any similarly-situated employee who engaged in misconduct similar to that in which Plaintiff engaged, but was treated more favorably; (5) with respect to Plaintiff's retaliation claims, the protected activities in which Plaintiff claims to have engaged lack close temporal proximity to Plaintiff's termination, and (6) Plaintiff cannot identify any public policy which was violated by his termination, or any evidence that CNMC terminated his employment because of any protected conduct.  *Id.* at 2.   With respect to Plaintiff's claims that he was terminated in violation of public policy, Defendants submit, more specifically, that Plaintiff "has failed to identify any specific public policy that would have been violated[]"; that "[he] cannot prove any of the alleged complaints he made were the 'sole cause' for his termination[,]" and that "[he] lacks evidence to convince a reasonable jury that his termination was caused by anything other than his own [in]subordination."  *Id.* at 37-38.   With respect to the individual Defendants, Defendants broadly submit that Plaintiff has no evidence to support any claims against any of them.  *Id.*; *see also id.* at 20, 38-39.[4]

---

[3] *See infra.* n. 5.

[4] Defendants submit that "Plaintiff conceded in his deposition that many of [the individual Defendants] were sued merely because of their position[s][,]" and "also conceded that he has no evidence that any of the Individual Defendants acted outside the scope of their employment with CNMC."  *Id.* at 38.

Plaintiff, in his opposition, asserts that summary judgment in favor of Defendants should be denied "because [he] provided sufficient evidence for a jury to conclude that the reason given for his termination was false and pretext[ual] and the real reasons were (1) retaliation for reporting violations of regulations related to patient safety and the safety of drugs dispensed to the public; (2) retaliation for making a complaint of assault to the Metropolitan Police Department[,] and (3) retaliation for reporting harassment, hostile work environment and discrimination."   Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition") (ECF No. 60) at 1-2, 18.[5] With respect to the four remaining individual Defendants, Plaintiff submits that "[he] has established individual liability under Section 1981 because [the four remaining individual Defendants] . . . all participated in the decision to terminate [him]."   *Id.* at 25-26.   More specifically, Plaintiff submits that the four remaining individual Defendants "retaliated against [him] by terminating him for insubordination in the face of evidence that he was present at HR at the appointed time for the meeting on December 3, 2014."   *Id.* at 26.

Defendants, in their reply to Plaintiff's opposition, submit that Plaintiff has failed to offer evidence from which a reasonable trier of fact could find that the reason offered by Defendants for the termination of Plaintiff's employment was not the actual reason, and that his employment was terminated because he filed an Equal Employment Opportunity Commission charge, or because he made anonymous complaints to regulatory agencies concerning pharmacy practices, or because he filed a police report against his supervisor.   Defendants' Reply at 1-2.   More specifically, Defendants submit that "Plaintiff's entire case rests on pure speculation and his

---

[5] Plaintiff thus seemingly concedes, as Defendants submit, that the only viable claims are those which concern the termination of his employment.  Additionally, Plaintiff appears to have withdrawn his contention that the termination of his employment was discriminatory, and instead, now submits only that the termination of his employment was retaliatory.

unsupported self-serving affidavit that merely recites the allegation in his Amended Complaint."

Id.; *see also id.* at 6 ("Plaintiff's conclusory and speculative assertions, which are devoid of any

factual content, are nothing more than 'mere[] allegations' upon which Plaintiff cannot base his

claims.") (quoting Fed. R. Civ. P. 56(e)(2)).

## III.    Applicable Standards

### A. *Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  An issue is genuine if the "evidence is such that a reasonable jury could return

a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Whether a fact is material is determined based on whether it might affect the outcome of the suit

under the governing law.  *Id*.  The party seeking summary judgment must identify "those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"[A] party opposing a properly supported motion for summary judgment may not rest

upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 248, 256 (internal quotation marks

omitted).  "Conclusory allegations without any factual support in the record cannot create a

genuine dispute sufficient to survive summary judgment."  *Coates v. Washington Metro. Area

Transit Auth.*, Civil Action No. 15-02006, 2018 WL 1210861, at *2 (D.D.C. Mar. 8,

2018)  (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462,

465-66 (D.C. Cir. 2009)).  Moreover, where "a party fails to properly support an assertion of fact

or fails to properly address another party's assertion of fact," the district court may, among other

actions, "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).

Additionally, the Local Civil Rules of this Court require that

> [e]ach motion for summary judgment shall be accompanied by a
> statement of material facts as to which the moving party contends
> there is no genuine issue, which shall include references to the
> parts of the record relied on to support the statement.   An
> opposition to such a motion shall be accompanied by a separate
> concise statement of genuine issues setting forth all material facts
> as to which it is contended there exists a genuine issue necessary to
> be litigated, which shall include references to the parts of the
> record relied on to support the statement. . . . In determining a
> motion for summary judgment, the Court may assume that facts
> identified by the moving party in its statement of material facts are
> admitted, unless such a fact is controverted in the statement of
> genuine issues filed in opposition to the motion.

LCvR 7(h)(1).   "The purpose of this rule is to 'place[] the burden on the parties and their

counsel, who are most familiar with the litigation and the record, to crystallize for the district

court the material facts and relevant portions of the record.'"  *Bruder v. Chu,* No. 11-1492, 2013

WL 3722334, at *1 (D.D.C. July 17, 2013) (quoting *Jackson v. Finnegan, Henderson, Farabow,*

*Garrett & Dunner,* 101 F.3d 145, 151 (D.C. Cir. 1996)).   "Because [LCvR 7(h)] helps the district

court maintain docket control and decide motions for summary judgment efficiently, the D.C.

Circuit has repeatedly upheld district court rulings that hold parties to strict compliance with this

rule."  *Lockhart v. Coastal Int'l Sec., Inc.,* No. 11-02264, 2013 WL 6571605, at *1, n.2 (D.D.C.

Dec. 14, 2013) (internal quotation marks omitted) (quoting *Robertson v. Am. Airlines, Inc.,* 239

F. Supp. 2d 5, 8 (D.D.C.2002)).

When deciding a motion for summary judgment, "[c]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences" are not the Court's role;

instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255; *see also Figueroa v. Tillerson,* Civil Action No. 16-00649, 2018 WL 646883, at *4 (D.D.C. Jan. 31, 2018) ("When deciding a motion for summary judgment, the Court must 'examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to' the nonmoving party.") (quoting *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016) (citation omitted)).   "If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate." *Coates*, 2018 WL 1210861, at *2 (D.D.C. Mar. 8, 2018) (citing *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009)).   Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.   Put another way, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### B.  *Wrongful Termination in Violation of Public Policy*

Generally, in the District of Columbia, "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Harris v. D.C. Water & Sewer Auth.*, 195 F. Supp. 3d 100, 104 (D.D.C. 2016), *appeal dismissed*, Civil Action No. 16-7097, 2018 WL 846615 (D.C. Cir. Jan. 3, 2018) (quoting *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991) (citations omitted)).  However,

the District of Columbia Court of Appeals has held that an intentional tort for wrongful discharge exists "where 'the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation.'" *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 50 (D.D.C. 2012) (quoting *Adams*, 597 A.2d at 34). Later the District of Columbia Court of Appeals extended this narrow exception to permit courts to recognize additional public policy exceptions subject to the following qualification: The District of Columbia recognizes a common law tort of wrongful discharge "as an exception to the traditional at-will doctrine governing termination of employment, where the discharge violates 'a clear mandate of public policy.'" *District of Columbia v. Beretta, USA Corp.*, 872 A.2d 633, 645 (D.C. 2005) (en banc) (quoting *Carl v. Children's Hosp.*, 702 A.2d 159, 164 (D.C. 1997)). When asked to apply the exception:

> [The] court should consider seriously only those arguments that reflect a *clear mandate of public policy*—i.e., those that make a clear showing, based on some identifiable policy that has been officially declared in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a *close fit* between the policy thus declared and the conduct at issue in the allegedly wrongful termination.

*LeFande,* 864 F. Supp. at 50 (quoting *Carl*, 702 A.2d at 164) (emphasis supplied).

Further, this narrow exception is recognized in this jurisdiction when violation of such public policy is the "sole reason" for the employee's termination. *Arias v. Marriott Int'l, Inc.*, 217 F. Supp. 3d 189, 197 (D.D.C. 2016); *see also Battles v. Washington Metro. Area Transit Auth.*, 272 F. Supp. 3d 5, 14, n.2 (D.D.C. 2017) ("there is a cause of action for wrongful termination where an at-will employee acted in furtherance of a public policy and was terminated solely on the basis of such conduct." (citation and internal quotation marks omitted).

### C.  Retaliation

11

Title VII of the Civil Rights Act makes it unlawful for any employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Where there is no direct evidence of discrimination, Title VII claims are assessed pursuant to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.  To allege a *prima facie* case of discrimination, a plaintiff must show that he "is a member of a protected class," that he "suffered an adverse employment action," and that "the unfavorable action gives rise to an inference of discrimination." *Youssef v. F.B.I.*, 687 F.3d 397, 401 (D.C. Cir. 2012) (quoting *Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002)).

Once the plaintiff has made out a *prima facie* case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [employment action that is challenged].'" *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817).  Once an employer has proffered a nondiscriminatory reason, the *McDonnell Douglas* burden-shifting framework ceases, and the court must then determine whether the plaintiff has proffered enough evidence to defeat the defendant's proffer and support a finding of discrimination.  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007).

At the summary judgment stage, courts may consider plaintiff's *prima facie* case, evidence proffered by the plaintiff to rebut the employer's explanations for actions taken, and any additional evidence of discrimination that the plaintiff might proffer.  *See E.g., Hampton v.*

*Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (noting that, to avoid summary judgment, a plaintiff need not submit evidence "over and above" that necessary to rebut the employer's stated reason) (quotation omitted). A plaintiff's disagreement with an employer's explanation cannot alone "satisfy the burden of showing that a reasonable jury could find that the employer's asserted reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Burton v. District of Columbia*, 153 F. Supp. 3d 13, 58 (D.D.C. 2015).

"Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." *Johnson v. Ry. Exp. Agency, Inc.,* 421 U.S. 454, 459, (1975). Courts analyze Title VII and Section 1981 employment discrimination claims under similar legal standards. "Under either Title VII or Section 1981, [the plaintiff] must demonstrate by a preponderance of the evidence that the actions taken by the employer were 'more likely than not based on the consideration of impermissible factors' such as race, ethnicity, or national origin." *Pollard v. Quest Diagnostics,* 610 F. Supp. 2d 1, 18 (D.D.C. 2009) (*quoting Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981)). Under this standard, the plaintiff may either prove his claim with direct evidence of discrimination or he may indirectly prove discrimination under the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, (1973). The *McDonnell Douglas* burden-shifting framework applies to employment discrimination claims, *id.;* retaliation claims, *Carney v. American Univ.,* 151 F.3d 1090, 1094 (D.C. Cir. 1998); and claims brought pursuant to Section 1981, *Carter v. George Washington*

*Univ.,* 387 F.3d 872, 878 (D.C. Cir. 2004).  Thus, the undersigned will also analyze the Section 1981 claim in tandem with the Title VII claim.

When it comes to prohibiting discrimination and retaliation, the D.C. Human Rights Act "uses almost precisely the same language" as Title VII.  *Thomas v. District of Columbia*, 209 F. Supp. 3d 200, 204 (D.D.C. 2016).  Hence, "[w]hen presented with a suit alleging violations of each law, courts generally evaluate the claims under Title VII jurisprudence."  *Id.*; *see also Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999) (noting that District of Columbia courts follow the burden-shifting test applicable to Title VII claims when evaluating DCHRA claims and "seem[] ready to accept the federal constructions of Title VII, given the substantial similarity between it and the [DCHRA]").

Accordingly, the undersigned applies the Title VII standards to the consideration of Plaintiff's Section 1981 and D.C. Human Rights Act claims.

## IV.    Discussion

### A.    *Alleged Termination of Employment in Violation of Public Policy*

As the undersigned discusses in greater detail in Section B., *infra*, Defendants proffer that the reason for the termination of Plaintiff's employment was a legitimate, non-discriminatory, reason, *i.e.*, Plaintiff's "clear pattern of combative and insubordinate behavior toward his direct supervisor[.]"  Defendants' Memorandum at 1; *see also id.* at 10-18 (Defendants' Statement of Undisputed Facts); 25-27.  As evidence of such legitimate, nondiscriminatory reason, Defendants offer a total of 25 exhibits.  *See* Defendants' Statement of Material Facts at 10-18; Exhibits (ECF Nos. 59-15, 59-16, 59-17, 59-18, 59-19, 59-20, 59-21, 59-22, 59-23, 59-24, 59-25, 59-26, 59-27, 59-28, 59-29, 59-30, 59-31, 59-32, 59-33, 59-34, 59-35, 59-36, 59-37, 59-38, 59-39).  The

exhibits primarily consist of email and other exchanges – some of which were authored by Plaintiff himself – concerning the perceptions of Plaintiff's conduct. *E.g.*, Exhibit 13 (ECF No 59-15) (email from Plaintiff requesting a meeting with a Human Resources representative "re Dr. Donegan's claim the 'she feels she is being bullied' by me whenever we interact"); Exhibit 14 (ECF No. 59-16) (including Plaintiff's acknowledgment that "I placed my pen on a prescription label that [Dr. Donegan] was holding in her hand[]"); Exhibit 19 (ECF No. 59-21) (Dr. Donegan's letter to Plaintiff, six months prior to the termination of his employment, noting, *inter alia*, that "it is expected that you comply with my instructions and be courteous and professional when dealing with me and your coworkers[,]" and that "your continued refusal to follow my direction could also be perceived as insubordinate, which is a violation of our Corrective Action Procedure."); Exhibit 27 (ECF No. 59-29) at 3 (directive of Dr. Donegan to Plaintiff that he refrain, as she previously directed, from including his personal email when engaging in CNMC-related communications).

Before a court can reach the issue of whether an individual whose at-will employment was terminated has offered evidence from which a reasonable trier of fact could find that such termination was in violation of public policy – and that the allegedly protected conduct was the "sole reason" for the termination – the individual first must "point to some identifiable policy that has been officially declared in a statute or municipal regulation, or in the Constitution[.]" *Clay v. Howard University*, 128 F. Supp. 3d 22, 28 (D.D.C. 2015) (the "common denominator" in viable wrongful termination claims is the existence of *specific* laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained, whether or not the employer actually violated the law or regulation.") (citation and internal quotation marks omitted) (emphasis supplied).

However, as Defendants aptly observe, *see, e.g.*, Defendants' Memorandum at 37, Plaintiff has failed to offer evidence of any "identifiable policy" allegedly violated.   Rather, Plaintiff cites five District of Columbia Code provisions, three District of Columbia Municipal Regulations, a United States Code provision, and two Code of Federal Regulations provisions in support of his assertion that (1) "Public policy in the District of Columbia promotes patient safety and the safety of drugs dispensed to the public[,]" and "Public policy of the District of Columbia promotes the rights of its citizens to seek assistance of law enforcement through the filing of police reports."   Plaintiff's Opposition at 3 (Plaintiff's Statement of Genuine Issues), ¶¶ 11, 34; *see also id.* at 19-21, 27.   As Plaintiff offers no exhibits to support these assertions, the undersigned has undertaken a review of each of the 11 provisions.   Having done so, the undersigned finds that none of them – read individually or in combination with others – declares any "identifiable policy" on which a claim of wrongful termination in violation of public policy could be predicated.   *Cf. Omwenga v. United Nations Foundation*, 244 F.Supp.3d 214, 221 (D.D.C. 2017) (finding that the municipal regulations cited by the Plaintiff reflect the public policy alleged).   [6]

Given this finding, the undersigned concludes that no further inquiry with respect to whether a reasonable trier of fact could conclude that Plaintiff was terminated in violation of public policy is warranted.   However, assuming, *arguendo*, the existence of an "identifiable

---

[6] Here, Plaintiff cites a District of Columbia Municipal Regulation pertaining to the supervision of the practice of pharmacy (D.C. Mun. Regs. tit. 17, § 6508); two District of Columbia Municipal Regulations and a United States Code provision pertaining to recordkeeping of pharmacy records (D.C. Mun. Regs. subt. 22-B, § 1913,  D.C. Mun. Regs. subt. 22-B, § 1914 and Food, Drug, and Cosmetic Act, § 505(i), as amended, 21 U.S.C. § 355(i)); a District of Columbia Code provision pertaining to disciplinary actions in the context of pharmacy licensure (D.C. Code Ann. § 3-1205.14); two Code of Federal Regulations pertaining to investigational drug studies (21 C.F.R. 312.1, *et seq* and 42 C.F.R. 93.100, *et seq.*), and four District of Columbia Code provisions pertaining generally to assaults and victim's rights  (D.C. Code Ann. § 1-301.191,  D.C. Code Ann. § 23-1901, D.C. Code Ann. § 22-403 and D.C. Code Ann. § 22-404).

policy" on which Plaintiff can base his claim, the undersigned further finds that Plaintiff has

offered no evidence that his protected conducted was the "sole reason[.]"  *Hewitt v. Chugach*

*Gov't Servs., Inc.*, Civil Action No. 16-02192, 2016 WL 7076987, at *2 (D.D.C. Dec. 5, 2016).

Instead, Plaintiff offers only his bare speculation that his protected conduct was the reason for

the termination.  *See, e.g.*, Plaintiff's Opposition at 20 ("Defendants' reason for Plaintiff's

termination is suspect because Defendants did not follow the Employee Handbook guidelines on

termination and ignored Plaintiff's claim that he came to the meeting . . . as requested.").  Such

speculation is insufficient to survive a motion for summary judgment.  *E.g. Nunnally v. District*

*of Columbia*, 243 F. Supp. 3d 55, 68-69 (D.D.C. 2017) (observing that "a plaintiff's mere

speculations are insufficient to create a genuine issue of fact regarding an employer's articulated

reasons for its decisions and avoid summary judgment.") (citation omitted).[7]


### B.  Alleged Retaliation in Violation of Title VII, Section 1981 and the D.C. Human Rights Act

Plaintiff, in his opposition to Defendants' motion for summary judgment,  maintains that

Defendants' motion should be denied "because [he] provided sufficient evidence for a jury to

conclude that the reason given for his termination was false and pretext[ual] and the real reasons

were (1) retaliation for reporting violations of regulations related to patient safety and the safety

of drugs dispensed to the public; (2) retaliation for making a complaint of assault to the

---

[7] *Liberatore v. Melville Corp.*, 168 F.3d 1326 (D.C. Cir. 1999), on which Plaintiff relies, *see* Plaintiff's Opposition at 20, is distinguishable.  In *Liberatore*, as here, the plaintiff challenged the termination of his employment on the ground that his employer violated public policy in doing so.  A panel of the District of Columbia Circuit reversed the District Court's grant of summary judgment in favor of the employer, finding that the challenged conduct "implicate[d] the public policy underlying the legal proscriptions on the storage and handling of drugs."  168 F.3d. at 1331.  However, this is not the public policy on which Plaintiff, in this action, bases his claims.  *See* Plaintiff's Opposition at 3 ("Public policy in the District of Columbia promotes patient safety and the safety of drugs dispensed to the public."); *id.* at 8  ("Public policy of the District of Columbia promotes the rights of its citizens to seek assistance of law enforcement through the filing of police reports.").

Rae v. Children's National Medical Center, et al.                                                    Appendix A

Metropolitan Police Department; and (3) retaliation for reporting harassment, hostile work environment and discrimination."   Plaintiff's Opposition at 1-2.   The undersigned finds, however, that Plaintiff – his assertion to the contrary notwithstanding – has not offered "sufficient evidence" from which a reasonable trier of fact could find in his favor; indeed, he has offered *no* evidence that the proffered reason for the termination of his employment was false, or was a pretext for retaliation.

As noted in Section A, *supra*, Defendants offer evidence in support of their proffer of a legitimate, non-discriminatory reason for the termination of Plaintiff's employment.[8]   Thus, Plaintiff must proffer evidence "to show that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"   *Gilliard v. Gruenberg*, Civil Action No. 16-02007, 2018 WL 1471949, at *4 (D.D.C. Mar. 26, 2018) (quoting *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005)); *see also* Brady, 520 F.3d at 494, *Woodruff*, 482 F.3d at 530.   However, Plaintiff, in his "Statement of Genuine Issues[,]" fails to identify a single "material fact[] as to which it is contended there exists a genuine issue necessary to be litigated," *see* LCvR 7(h), and instead, merely recounts the chronology of events during the course of his employment at CNMC; his concerns regarding patient safety and the safety of drugs dispensed to the public; his complaints regarding harassment, hostile work environment and discrimination, and his denial of having been insubordinate.   *See* Plaintiff's Opposition at 2-18.   However, "the Court can neither credit [any assertions], nor conclude that they controvert defendant's factual assertions."   *Barot v. Embassy of Republic of Zambia*, Civil Action No. 13-00451, 2018 WL

---

[8] With respect to Plaintiff's retaliation claim, Defendants offer, in addition, evidence that at the time Plaintiff's employment was terminated, no one was aware that Plaintiff had made any reports of violations of regulations related to patient safety and the safety of drugs, or that he had reported harassment, hostile work environment and discrimination. *See* Defendants' Statement of Material Facts at 10-18, Defendants' Exhibit 38 (ECF No. 59-40), D. Cooper Affidavit (ECF No. 59-47) at ¶ 14; Z. Russell Affidavit (ECF No. 59-48) at ¶ 17.

Rae v. Children's National Medical Center, et al.                                    Appendix A

1210862, at *5, n.8 (D.D.C. Mar. 8, 2018) (citing LCvR 7(h)); *see also Mack v. Georgetown Univ.*, Civil Action No. 15-00793, 2017 WL 4325596, at *2 (D.D.C. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 4325617 (D.D.C. Sept. 27, 2017) ("a district court should not be forced to comb through the factual record to ferret out disputes of material fact[]").) (citation omitted).

Nonetheless, the undersigned has reviewed each of the exhibits Plaintiff filed in an effort to determine whether any exhibit, or combination of exhibits, serves as evidence of a genuine issue regarding a fact material to Plaintiff's retaliation claims. Having done so, the undersigned answers the inquiry in the negative.[9] Rather, the exhibits fairly may be characterized as documentation of Plaintiff's narrative concerning the interactions among him, his supervisor and other managers. *See, e.g.*, Plaintiff's Exhibit 15 (ECF No. 60-16) (Plaintiff's "Report of Contact re Public ridicule and embarrassment by immediate supervisor[]").[10]

### C. *Individual Defendants*

---

[9] By way of illustration, the undersigned notes that Plaintiff's exhibits include his own declaration, which can be accorded little weight in any event. *See Berry v. Coastal Int'l Sec., Inc.*, Civil Action No. 12-01420, 2016 WL 1060196, at *3, n.3 (D.D.C. Mar. 15, 2016), *aff'd*, Civil Action No. 16-7043, 2016 WL 4434664 (D.C. Cir. Aug. 22, 2016). In the declaration, Plaintiff states, *inter alia*, that "[t]he letter of termination. . . states that I received repeated counseling by numerous employees; however, in her deposition, Dr. Donegan said she did not know of any employee who counseled me other than herself and Denise Cooper." Plaintiff's Exhibit 1 (Declaration of Plaintiff Charlesworth Rae) (ECF No. 60-2), ¶ 42. The undersigned finds that whether Plaintiff was counseled by "numerous" employees or by only two employees is not a fact which is material. *See Am. Civil Constr., LLC v. Fort Myer Constr. Corp.*, Civil Action No. 15-00515, 2018 WL 953328, at *3 (D.D.C. Feb. 20, 2018) ("'Material' facts are those capable of affecting the substantive outcome of the litigation[.]") (citing *Liberty Lobby, Inc.*, 477 U.S. at 248 (1986)).

[10] The undersigned's review of the exhibits offered by Plaintiff included consideration of Plaintiff's Exhibit 7, Plaintiff's Amended Response to Interrogatories [Propounded by] Defendant Children's National Medical Center, *see* ECF No. 60-8, which was the subject of Defendants' Motion to Strike (ECF No. 64). Because the amended interrogatory response cannot reasonably be construed as evidence sufficient to create a genuine issue for trial, the undersigned has no occasion to reconsider the order denying the motion to strike without prejudice. *See* 03/02/2018 Minute Order.

As Plaintiff has failed to offer evidence from which a reasonable trier of fact could find in his favor regarding his claims of termination in violation of public policy, or his claims of retaliation, no discussion of Plaintiff's purported claims against the four remaining individual Defendants is necessary: any claim against any one of them must be predicated upon one or more of the causes of action which Plaintiff pled, none of which can survive summary judgment. Plaintiff's theory of liability with respect to the four remaining individual Defendants is that they "were personally involved in the [retaliatory] activity–Plaintiff's termination."   Plaintiff's Opposition at 25.   Assuming, without deciding, that all four remaining individual Defendants "were personally involved" in the decision to terminate Plaintiff's employment, such involvement does not create a cause of action against them.[11]

## V.   Conclusion

Defendants have offered legitimate, non-retaliatory and non-discriminatory reasons for the decision to terminate Plaintiff's employment.   Plaintiff has failed to offer evidence that the actions challenged were violative of public policy.   Likewise, Plaintiff has failed to offer evidence which could lead a reasonable trier of fact to discredit the proffered legitimate, non-retaliatory, non-discriminatory reasons; to find that the proffered reasons were pretextual, or to

---

[11] The undersigned finds that Plaintiff's reliance on *Telesford v. Maryland Provo-I Med. Servs., P.C.*, 204 F. Supp. 3d 120, 131 (D.D.C. 2016), *see* Plaintiff's Opposition at 25-26, is misplaced.  In *Telesford*, the Court stated the settled proposition that "there can be no individual liability" under Title VII against the individual defendants.  204 F. Supp. 3d at 131 (citation omitted).  The Court reached the opposite conclusion with respect to the individual defendants in the context of the plaintiff's Section 1981 claims.  However, that conclusion was based upon a finding that the plaintiff had offered evidence giving rise to a viable Section 1981 claim, *see id.* at 132; in the instant action, the undersigned has determined that Plaintiff failed to do so.

find that retaliation against him was the true reason for the termination of his employment.

It is therefore, this 28th day of March, 2018,

**RECOMMENDED** that Defendants Children's National Medical Center, et al.'s Motion

for Summary Judgment (ECF No. 59) be **GRANTED** with respect to the remaining claims and

Defendants.[12]


                                        _____/s/_____
                                        DEBORAH A. ROBINSON
                                        United States Magistrate Judge


**Within fourteen days, any party may file written objections to this report and recommendation.  The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each objection.  In the absence of timely objections, further review of issues addressed may be deemed waived.**

---

[12] *See supra* n.2.